The next case for argument is 23-2263 IGT v. Zynga. Mr. Gannon, whenever you're ready. Good morning. May it please the Court. After IGT filed its patent owner response, it was an avalanche from the Board and Zynga of new theories, new passages, new embodiments, completely new claim construction theories on reply and in the final written decision, which was totally improper. Let me start with the claim construction issue. There were two claim construction issues. One was a message trigger condition. The claim is very clear. In Claim 1, Element 1D, the claim says, the message trigger condition, and the antecedent basis for that is in Element 1C, which is a message trigger condition. And the Board said that the message trigger condition in Element D can be a completely different message trigger condition than in Element 1C. The words that you just used assumes that the identical condition at different times you're treating as a different condition. What the Board and Zynga said is that, well, the example they gave was end of game. It's a type of condition. There could be an end of a game and then an end of another game. Those two things are different triggers. They're not the same. Okay. The Board. And do I get the right number right? The Board said, I think what you just said, that the same condition at different times, end of game, but end of game 1, end of game 2, we think are really just the same condition because it's the same type. But didn't it also say that respite's decision independently of finding that, even if you're talking about a single condition at a single time, that the prior art here shows two different messages? I may not have the right language. Well, so what the Board did, a couple things the Board did. Yeah, two different messages. Yeah, a couple things that the Board did. One, in the final written decision, the Board came up with an entirely new theory. The Board said, even if the prior art doesn't teach a single message with two messages, a single trigger condition with two messages, it would have been obvious. Nobody argued that in the petition. It wasn't even in the reply that came up for the first time. Where in the Board decision does it say that? That's in Appendix 36. And I'm going to get to Judge Charanto's question, but I think the fact that the Board brought up an entirely new theory of invalidity in the final written decision, completely improper. We're on page 36. It's Appendix... I'm on 36. Appendix 36. It's near the bottom. It's where the paragraph starts. Even if a risk and threat did not expressly disclose multiple messages being provided to a player based on a single trigger condition, we do not see a great logical leap for a person of ordinary skill in the art to provide one message or alternatively multiple messages based on a single trigger condition. That was never even argued by Zinga at all. Not even in the reply. And what they're referencing in that paragraph is to the testimony of the expert, Mr. Crane. So wasn't he talking about that during the proceeding? He was not. He was not because in the petition where Mr. Crane was cited in the petition, this new theory wasn't even addressed by the expert. In the petition. And so again, Zinga and their expert, this new theory that the board articulated on page 36, nowhere to be found in Zinga's papers or the expert declaration because again, the expert was supporting the petition and when IGT pointed out the flaws in that petition in the patent owner response, all of a sudden we get this new theory from Zinga saying, well, actually it doesn't have to be the same trigger. It can be a different trigger, which makes no sense because the claim doesn't say that. So I know that you wanted to get back to, so my question is about page 32. Page 36. No, page 36. Right in the middle of the paragraph, the only paragraph that begins right smack in the middle. We also agree with Petitioner that even if the claims are understood to encompass the output of two messages based on the single occurrence of a trigger condition, Aristocrat teaches this as well. That's not a, I don't think that, well, I'll ask the question. That's a different point from the point you just made about page 36. So I guess the question is, even if the board acted improperly at page 36, why doesn't this support what the board did? Your Honor, could you just tell me what page you were on? It's appendix 32. Oh, 32. I'm sorry. Sorry, 32.  Okay. So what the board, in addition to the new theory, the board in the final written decision cited to a new passage of Aristocrat, which was improper, saying, well, Aristocrat, we're looking, I look at, you know, the board said we're looking at this passage and we see a single message, a single trigger with multiple messages, but the passage that the board relied on was completely new. Well, it was in the record, so it's not completely new. They're citing the Petitioner's reply. Did the Petitioner's reply not include or cover this passage from Aristocrat? The passage that the board relied on was not identified by Zynga in their petition. But what the board did was in the Petitioner's reply. The Petitioner's reply does make this point. So one would have a dynamic in which, which I think is maybe not that usual, I don't, never mind whether it's improper, in which a petition says we made this claim to mean X under that, this, and then the Patent Owner's response comes in and says you're reading it wrong, and the reply says, well, even if we agree with the Patent Owner, even if you were to agree with the Patent Owner about that reading, the prior art that we have been relying on actually teaches that too. Right. And you say they can't do that. That they cannot do that, and the reason why is because what you're citing to on page 32 is a new embodiment from the reference, and that embodiment different from the passage that we were just referring to. The new embodiment was not mentioned at all in the petition. It came up for the first time in reply, and we cite cases that are very clear with respect to this issue. Core Photonics talks about this. Yeah, the Lasakia finance case, the Ariosa-Varinata case, and the Apple-Massacino case. It's very clear that in a reply, the petitioner cannot shift gears and go to an entirely new embodiment, and that's what they did, and just so it's clear, I want to be perfectly clear about this, Zynga admits that what they relied on on page 32 is a new embodiment. They admit that it's a new embodiment. Was there a surreply practice on this point? There was a surreply, but IGT did not get a chance to file any declaration from its expert explaining why this new embodiment, and by the way. And when you say didn't get a chance, you didn't ask for a chance, right? That's correct, Your Honor. But again, at the time, it was IGT's belief that this new embodiment was improper and that us asking for another declaration and a surreply would have been denied. It would have been fruitless to do that. I mean, in other words, if that was true, we would have to anticipate all these other different embodiments and put that in our expert declaration. There's no requirement. Wait a minute. I don't understand what you're saying. You say the petitioner put something new in its reply that wasn't in the petition, so you would need a chance to respond. You did respond to that, but then you said you didn't ask for a declaration, which you could have asked to submit a declaration because of other embodiments. I mean, we're only talking about this embodiment, right? That's right. We did not ask for another declaration because we believe that the Board would not have permitted further evidence on this particular issue when you're talking about a completely new embodiment. Just to be clear, I want to make sure. Well, why did you believe that? You said when we're talking about an entirely new embodiment, that would be a reason that the Board would grant you the ability to do it, not let you do it. Well, so again, Your Honor, at that point in time, asking the Board to open up the evidence and have our expert on a SIR reply, be talking about some other embodiment, which Zinga admits is a new embodiment, which wasn't put in their petition, and that's the problem with this whole case is the petition failed, and we pointed it out in our patent owner response, and after that it was wide open. New theories, new passages, new embodiments. You can't do that. That's not fair to IGT. It's not fair, especially when Zinga admitted that the passages that we're referring to that Judge Toronto mentioned, it's at page 6, 9 through 13, and page 26 of line 34 to 27. Those are the passages from Aristocrat, and at the hearing, Zinga admitted those passages were not mentioned at all by them or their expert. In the petition. Correct. Correct, Your Honor, in the petition. Zinga, in their red brief on page 26, acknowledged that they talk about on page 26 of their red brief these different embodiments. They're talking about the other embodiments, and they're referring to that other embodiment pointed out by Judge Toronto as a different embodiment. They're saying the board recognized combining different embodiments. They're saying that is a different embodiment, and you cannot do that on reply. It's improper. And the cases that we cited on that. Can I just ask, in the SIR reply, and I'm looking at the SIR reply, which is I think when I was at page 378 of the appendix, did you make this as an argument in SIR reply? You have many arguments here in SIR reply. Is one of them that the petitioner's reply introduced a new argument based on an embodiment of Aristocrat not previously relied on? Yeah, the answer, I'm flipping through it here, Your Honor. The answer is yes. Page 16, the reply presents a new individual. This is appendix page 398. That's page 16. Yeah, it's not in the appendix. It is page 16 of the SIR reply. It's in here? It's not in here. It is in here. It's the page. Page 16 of the SIR reply? Yeah. Appendix 398. It's in my version, unless I'm looking at the wrong thing. Well, what do you want to say about it? You have it, the appendix numbers on it. It's not in 398. Maybe I'm wrong. I'm sorry. Okay, yeah. Yeah, it's 398. So there was a discussion of this new embodiment and how they're shifting their theory in their reply for the first time. Can I ask you, it's been a long week and I've got a lot of stuff in my brain, but everything we've been talking about on page 32, et cetera, only matters if this was an alternative argument for the Board, even if its construction is wrong. So if we agree with the Board's construction, all of these arguments are irrelevant. For this particular claim element, I would agree with that. If you were going to read the claim in a way that doesn't make sense. Of course, that's your view. The trigger has to be the same trigger. It's clear. I'm into my rebuttal time. Yeah. Were there other issues that you want to spend a couple minutes on just to be complete? Yeah, there are, Your Honor. Don't overdo it. Okay, so I think we've talked about the trigger condition. I want to mention the identify a player limitation. That was interesting because the parties agreed before the Board that identify a player means you're identifying the player. It's not just that somebody's playing. It's who is actually playing. That's the point of the patent. So the computer has to say norm. It has to know who it is that's playing, right? So you could insert a card that could be tied to you. The computer knows it's you. It's not just the games doing certain things. But I'm wondering, I mean, the petition, they argued in the petition, they cited stuff from aristocrat, that aristocrat does all this stuff with birthdays that seem to encompass identifying the player, right? Well, so if you look at the chart, we made a chart in our blue brief where they put forth all of the different messages and stuff, information that's being tracked, and then the messages tracked and then the information tracked. In the page. Sorry, yeah, let me find it. Page 46, for example. It's cited throughout our briefing, but page 46 of our blue brief, that's a table that they prepared where they're saying, okay, look, the trigger condition's the end of the game. The tracked information are the player's losses and the player's bets, and there's messages outputted. The problem is all those examples are agnostic to who's actually playing the game. That evidence is just there's somebody playing the game. The point about identifying a player that's bizarre in this case is that all the parties agreed identify a player means you have to know who the player is, and then in the final written decision, when the board came back and said, you don't have to identify a player. You don't have to know who's playing. It's just that somebody's playing. Somebody's playing, but you don't need to know who. And that came up for the first time in the final written decision even after the parties agreed that identify a player, you have to know who it is that's playing the game. And so why is that significant? Well, the claim term that we're concerned about here is tracking information associated with an identified player. I'm not seeing where the board said you don't need to identify. Are we dealing with 1A or 1B? Because the board seems to say 19. Yeah, it's appendix 39. Here's where the board said it. The board said for the first time on appendix 39, quote, the claims do not require ascertaining a person's personal identity. And so the board basically said, hey, that chart that you provided where you're not identifying, it's just console information, that meets the claim. And when IGT got the opinion, we were shocked. We're like, nobody's even arguing that. We were saying you had to identify the player. So what the board did was the board changed the construction, which was wrong, and then said all of the information about the console, the information that Zynga provided in their petition, met the claim. Again, the information that Zynga provided was it doesn't matter who's playing, it's just that someone's playing, that you're tracking what's going on with the console. And that just clearly doesn't meet the claim, identify a player. All right. May it please the Court, Lauren Weber on behalf of Zynga. As IGT concedes, the Court does not need to reach any of those procedural or substantial evidence arguments for the message trigger condition limitations if the Court agrees with the board's construction. And even if the Court disagrees with that construction, substantial evidence supports the board's conclusion that Aristocrat teaches those limitations under IGT's interpretation for the reason identified in Appendix 32, where the board relied on the passage recited. Yeah, but then they bring in all of their APA kind of process claims with respect to at least the alternative construction. So what say you to those?  So in our reply, we were responding to a brand new claim construction theory that IGT raised for the first time after institution. They changed course from their position in the district court where their preliminary infringement contentions followed our claim construction, the board's claim construction. You can see this at page 28 of our brief. The contentions are at Appendix 1533. They accuse different messages at the ends of different Zynga games of satisfying the message trigger condition limitations. We think that's the right construction, and that's what we were dealing with in the district court. So we proceeded with that theory in our petition. And then it was only after institution that IGT argued for the first time that a single occurrence of a message trigger condition must output two different messages. So under Exonix and Andrea, we were entitled to respond to that in our reply. We continued to rely on the exact same functionality, the same message trigger conditions, the same tracked information, the same messages. All we did was say, okay, if you think you need two different messages from a single occurrence of a trigger condition, here's an example of where Aristocrat does that. But that particular passage, the Column 6 passage, the four lines, and maybe Column 26 also had not been relied on in the petition. Correct. And is it fair? With Appendix 147. I don't have it in front of me. I mean, I do have it, but I don't remember it. Is that a different embodiment? I don't think it is, Your Honor, because we continued to rely on the same functionality. We consistently advanced a mix-and-match theory of Aristocrat where an expert explained that all of the embodiments are essentially interchangeable. They just represent different ways of delivering messages or different messages. If you look at the way Aristocrat uses the word embodiment in Appendix 1243 to 1244, for example, it's often talking about different versions of the character delivering a message. It might be Mr. Cashman or a slot machine, or sometimes it's a tiger. These are not fundamentally different ways of carrying out the invention. They're just different cartoon characters. But even if the Court believes that it's a new embodiment, IGT has not articulated any reason why we couldn't point to a new embodiment in reply. Would they change claim constructions after institution? Their briefs ignore that fact, and they pretend that they did not raise a new claim construction. But we were entitled to respond to that. The language at page 6 of Aristocrat is a little bit squishy about whether the sentence that begins however changes embodiments, maybe. And not the however, the next sentence. In cases where more than... those are the lines relied on. I'm sorry, could you say that slide again? 1227 in the Appendix, lines 9 through 13. That, I think, is what you all relied on in the reply and what they challenged in the surreply and what the Board ends up relying on, right? Incorrect in Appendix 1227. In cases where more than one different function or feature is triggered from the same bet, the functions or features will, etc. That paragraph uses the word embodiment a few times. I'm not entirely sure whether that's changing embodiments, but maybe that's more a, as they say, semantics than something else. Right, that's what we believe. But again, even if the Court disagrees, under Exonix and Andrea we were entitled to respond to IGT's new claim construction argument, and they have not put forth any reason why we couldn't rely on a new embodiment in response to that brand-new claim construction argument. They also, as the Court recognized, could have asked to submit a new declaration with their surreply. They just didn't do it. As Exonix notes, new evidence is not typically allowed with surreplies, but the Board can waive or suspend those requirements in appropriate cases. IGT just never asked to do it, so they now can't complain that they didn't get the opportunity to submit new evidence with their surreply. And unless the Court has further questions on the message trigger conditions, turning to identify a player, any error in the Board's construction there is harmless because we showed below that both Aristocrat and Boushey separately teach identifying a player in a personally identifying way, as with the happy birthday messages. IGT never disputed that the prior art teaches that limitation under its preferred construction. So there's no reason to reverse or remand where it's clear that the prior art teaches this even under their interpretation. And they're blurring two limitations together as well, where they're pointing then to the tracked information associated with the identified player. That's a distinct requirement from identifying the player itself happens at an earlier step, and then the tracked information just needs to be associated with that player, needs to have some commonality. There is no requirement that the tracked information in and of itself be personally identifying. Did the Board conclude that under the claim language to identify a player includes recognizing somebody has started playing the game? This person who's playing is now the person that I identified as the player. Yes, that's what the Board said. I'm looking on page 39. They said it doesn't require a player's personal identity, but then it goes on to say, simply requires determining that a bet has been placed on the machine and the game has been started. The person who placed the bet and is playing the game is then the identified player. Is that your understanding? Yes, that is what the Board said. But if that's an error, it's harmless and forfeited. I don't think you have yet said, here's why it's not an error. I'm sorry? I don't think I've heard you in the last three minutes say, here's why it's not wrong. We don't dispute that it was a procedural error, the sua sponte construction. Our position is that it was both harmless and forfeited. In our response brief here, again, for example, we show that Bushi teaches personally identifying a player, and the Board found that a skilled artisan would have been motivated to combine aristocrat and Bushi. IGT's reply brief does not say a word about Bushi, so they have forfeited any argument that the prior art doesn't teach identifying a player under their preferred construction. And I don't remember, so did the Board say about Bushi what you just said, or are you just saying, look at the evidence, it's clear, as opposed to, here's a fact finding on that question. The Board said that a skilled artisan would have been motivated to combine aristocrat and Bushi. Let me find the page number for you. That's at Appendix 48 to 49. The Board concluded that we provided sufficient articulated reason supported by evidentiary underpinnings to explain why a person of ordinary skill in the art would have combined aristocrat and Bushi. And there was never any dispute, either below or here, that Bushi teaches identifying a player by ascertaining their personal identity. But the Board doesn't cite Bushi for that. I mean, there's something in the Board opinion that the Board calls out that? No. The Board does find that motivation to combine, no. Thank you. Unless the Court has any further questions, questions or briefs, and Zenga asks that you affirm. Thank you. Thank you. We'll restore two minutes of rebuttal if you need it. Two minutes? Yeah. OK, thank you. Real quick, on the aristocrat reference, I want to make sure it's clear. So Judge Taranto, you mentioned page 6. I think that's the summary of the invention or early on in the reference. If you direct your attention to the second portion, which is sort of the meat of what they were relying on. That's the page 26 point? Yeah, it's correct. It's on page 26. If you look at page 26, that's appendix 447, that's the discussion of this random, you know, this feature is randomly generated. You can see that on page 26. Now, go back to page 25 and look at the bottom of page 25. At the very bottom, the paragraph starts, in one particularly preferred embodiment, a generic character, and it talks about this cash man, and it starts talking about, in this particular embodiment, there's this random generation of messages. This clearly is a new embodiment, just as, again, Zynga admitted in their red brief. With respect to the peace law, I just want to make sure it's really clear on this new embodiment issue. So the cases that we cited, we cited Wasilla Finance, Ariosa, Apple. Zynga relies on this Axionics versus Medtronics case where the patent owner response happened, and then there was information that came up in the reply. And just to be clear, in that particular case, there was no dispute as to whether that was a new embodiment. No one was arguing that it was a new embodiment. It was the same embodiment. And in fact, in that case, the Axionics case, the court said that it would leave for another day the question of whether when presented with a new claim construction, a petitioner can rely in its reply on a new embodiment. It left that for another day because in that case there was no issue with the same embodiment. So the cases that we cite say that you can't do that. You can't be putting in new embodiments. It's just not fair in a reply brief. And with respect to identify a player, I just want to show you what Zynga said with respect to identify a player below at Appendix 148. This is Zynga now saying, quote, Aristocrat system is able to identify which specific player is playing a machine not only to send appropriate messages, including birthday wishes, to the identified player. Zynga was saying it has to be an identified player in their petition. And again, we all thought that. I don't think she disputes that. Okay. And the board in the final written decision doesn't dispute that a new construction popped out. You don't have to identify the player. It just has to be console information, which was incorrect. And then I guess the last point I'd like to make, identify a player. Zynga argues that, well, we waived the argument. We didn't waive the argument. Identify a player, we all understood. It meant you had to identify the player. What we were talking about was tracking information associated with an identified player, and all the information in their chart didn't identify any, wasn't based on any particular player. So we did not waive it. Thank you. We thank both sides for cases. Thank you.